**SIGNED this 19th day of June, 2012**

_____
Marcia Phillips Parsons
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br>    GLENN S. MARTIN, JR.,<br><br>                Debtor. | No. 08-52631<br>Chapter 7 |
| RICHARD F. RAY, Trustee,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSEPH PAYTON IRVING,<br>LINWOOD LEE IRVING, SUE COLEMAN,<br>and WALTER G. MARTIN, JR.,<br><br>    Defendants. | Adv. Pro. No. 11-5059 |

# M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Michael H. Fitzpatrick, Esq.<br>Jenkins & Jenkins Attorneys, PLLC<br>800 S. Gay Street, Suite 2121<br>Knoxville, Tennessee 37929<br>*Attorney for Plaintiff*<br>*Richard F. Ray, Trustee* | Dean B. Farmer, Esq.<br>Hodges, Doughty & Carson PLLC<br>Post Office Box 869<br>Knoxville, Tennessee 37901<br>*Attorney for Defendants*<br>*Joseph P. Irving, Linwood L. Irving*<br>*and Sue Coleman* |

**Marcia Phillips Parsons, Bankruptcy Judge.** This is an avoidance action by the chapter 7 trustee pursuant to 11 U.S.C. §§ 549(a) and 550 to recover alleged unauthorized transfers of property of the estate made by the debtor to four individuals. Three of the defendants have answered and filed a countercomplaint alleging setoff, breach of contract, breach of the covenant of good faith and fair dealing, negligence, and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104, *et. seq*. Presently before the court are the parties' motions to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The trustee seeks dismissal of the countercomplaint, and the moving defendants seek dismissal of the complaint. As discussed hereafter, the defendants' motion will be denied, and the trustee's motion granted. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

I.

On December 31, 2008, Glenn S. Martin, Jr. ("Debtor") filed a voluntary petition for bankruptcy relief under chapter 11. He served as debtor-in-possession operating his farm and tobacco warehouse business until the court granted the United States' motion for the appointment of a trustee. Richard F. Ray was appointed trustee on March 2, 2009, and operated the business of the estate until June 16, 2010, when the case converted to chapter 7. Mr. Ray thereafter continued as trustee in the case.

On October 31, 2011, the Trustee commenced the present adversary proceeding against Walter G. Martin, Jr., Joseph Payton Irving, Linwood Lee Irving, and Sue Coleman. In the complaint as amended, the Trustee recites that in the late 1990's the United States obtained two judgments against the Debtor totaling in excess of $18 million, which judgments this court determined to be nondischargeable in an earlier bankruptcy proceeding. The current bankruptcy case was filed by the Debtor as a result of a bank levy by the United States to collect on these judgments.

According to the amended complaint, after the appointment of Mr. Ray as chapter 11 trustee, the defendants engaged in series of unauthorized transactions with the Debtor involving property of the bankruptcy estate which allowed the Debtor to defraud the estate. First, the Trustee alleges that the defendants at the Debtor's request agreed to allow the Debtor to sell estate tobacco in the defendants' names. More specifically, the Trustee describes eight different checks in various

2

amounts paid by Burley Stabilization Corporation ("BSC") to the defendants for the purchase of tobacco belonging to the estate. According to the amended complaint, defendant Joseph Irving received four checks from BSC for a total of $106,427.86; defendant Linwood Irving received two BSC checks totaling $63,527.05; defendant Sue Coleman, Linwood Irving's wife, received one BSC check for $80,176.20; and defendant Walter Martin received one check from BSC in the amount of $31,720.02. The Trustee seeks to avoid the transfers of these checks to the defendants and recover the amounts paid to each of them.

Additionally as to defendant Joseph Irving, the Trustee alleges that Mr. Irving at the Debtor's request deposited into his personal bank account nine checks derived from the sale of estate tobacco, which funds Joseph Irving then paid out as directed by the Debtor. Four of the deposited checks were checks from BSC received by Joseph or Linwood Irving as described in the preceding paragraph. Four other checks were also BSC checks but payable to non-defendant third parties. The last of the nine checks allegedly deposited by Joseph Irving into his bank account was a check from defendant Walter Martin to Joseph Irving in the amount of $29,653, a partial refund to the Debtor of the BSC check previously received by Mr. Martin. The Trustee alleges that all nine checks were property of the estate and seeks to recover from Joseph Irving the amounts of these checks totaling $225,858.74.[1]

Lastly, the Trustee alleges in the amended complaint that Joseph Irving purchased estate tobacco from the Debtor in eight transactions but at the direction of the Debtor made the eight checks payable to third parties, Crystal Honeycutt or Janet Aiken, rather than to the Debtor or the estate. The Trustee alleges that the transfers of estate tobacco to Joseph Irving were unauthorized and seeks to avoid the transfers and recover the value of the transferred tobacco from Mr. Irving.

---

[1] Because the Trustee seeks to avoid and recover as unauthorized transfers certain BSC checks received by Joseph Irving and then the subsequent deposit of these same checks by Joseph Irving into his bank account, the judgment amounts sought by the Trustee against Mr. Irving overlap and constitute double recovery in some respects. The Trustee presumably recognizes this fact by his statement in paragraph 31 of the amended complaint that "[to] the extent that the transactions identified in any particular paragraph hereinabove are the same funds identified in any other paragraph hereinabove, the plaintiff only seeks recovery once."

In their answer as amended,[2] defendants Joseph Irving, Linwood Irving, and Sue Coleman (hereinafter "Defendants") contend that they had no knowledge of the Debtor's bankruptcy or of the Trustee's operation of the Debtor's warehouse business at the time of the transactions in question. The Defendants deny generally that the checks in question represented property of the estate or that the transfers in question were unauthorized. More specifically, the Defendants deny that the Debtor requested or that he was authorized to use their names for the sale of tobacco. The Defendants admit receiving the referenced checks from BSC but deny that they were for the sale of estate tobacco. According to the Defendants, the BSC check to Sue Coleman was in payment of tobacco belonging to her and her husband, and one of the BSC checks to Joseph Irving was for tobacco sold by him.

With respect to the remaining checks alleged to have been received by the Irvings and/or deposited into Joseph Irving's account, the Defendants' answer admits receipt and Mr. Irving's subsequent deposit of the checks. According to the Defendants, the Debtor had requested Joseph Irving's help in expediting the cashing of the checks so that farmers could be paid for their tobacco, and all of the checks the Debtor gave to Joseph Irving for deposit had been endorsed by the named payee or were made payable to the Irvings, with the Debtor advising the Irvings that the checks payable to them were mistakes. The Defendants further admit that after the deposited checks cleared the bank, Joseph Irving paid out the proceeds as directed by the Debtor.

Lastly, as to the final allegations in the amended complaint that Joseph Irving purchased estate tobacco but wrote eight checks in payment of the tobacco to third parties at the Debtor's direction, Joseph Irving admits the allegations. He asserts, however, that he believed he was writing the checks to the sellers of the tobacco that he had purchased.

As affirmative defenses, the Defendants allege that the Trustee knew that the Debtor had conducted fraudulent business operations involving his tobacco warehouse both before and after the bankruptcy filing, and that it was because of this fraudulent activity that the Debtor was removed

---

[2] By orders entered June 7, 2012, the court granted the motion of the Trustee to file an amended complaint and the motion of defendants Joseph Irving, Linwood Irving, and Sue Coleman to file an amended answer. As of the filing of this memorandum opinion, only the amended complaint has been filed. Nonetheless, in considering the pending motions, the court took into account Defendants' proposed amended answer, which was attached as an exhibit to their motion to amend. The court notes, however, that the amended answer is to the original complaint rather than the complaint as amended.

as debtor-in-possession and Mr. Ray appointed as chapter 11 trustee. The Defendants maintain that the Trustee knew or should have known that the Defendants were buying and selling tobacco with the debtor and therefore should have notified them of the bankruptcy case and of the need to make payments directly to the Trustee. The Defendants allege that notwithstanding the Trustee's knowledge of the Debtor's fraudulent conduct, the Trustee authorized the Debtor to continue to operate the tobacco warehouse business on behalf of the estate, such that all transactions with the Defendants were therefore authorized and not avoidable. Alternatively, the Defendants assert that because of the Trustee's own negligence in allowing the Debtor to represent the estate in estate business the Trustee is estopped from pursuing these avoidance actions or has ratified the Debtor's actions on behalf of the estate. In this same vein, the Defendants assert that any loss to the estate was caused by the Debtor's fraud or the Trustee's negligence, breach of fiduciary duty, and failure to monitor or supervise the Debtor, with any recovery by the Trustee barred by the doctrine of unclean hands.

Based on these same facts, the Defendants assert various counterclaims against the Trustee, including setoff, negligence, and breach of the covenant of good faith and fair dealing. The Defendants also allege breach of contract based on the theory that under Tennessee law title to any tobacco purchased by Joseph Irving passed from the estate and the Debtor, and the Trustee's action to avoid or set aside the transactions constitutes breach of contract entitling the Defendants to damages equal to the amount sought by the Trustee in his avoidance claims. Similarly, the Defendants argue that by failing to supervise the Debtor in his operation of the estate's tobacco business or by authorizing him to act in an unsupervised manner the Trustee engaged in unfair and deceptive practices in willful and knowing violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104, *et seq.*, entitling the Defendants to damages in the same amounts the Trustee seeks to recover, plus treble damages and attorney fees.

II.

As previously noted, the Trustee has moved to dismiss the Defendants' countercomplaint and the Defendants have moved to dismiss the Trustee's complaint. Both motions are premised on Federal Rule of Civil Procedure 12(b)(6), applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7012, which provides that complaints may be dismissed for "failure to

5

state a claim on which relief can be granted." As stated by the Sixth Circuit:

> The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir.1983); 2 Moore's Federal Practice § 12.34[1][b] (Matthew Bender 3d ed. 2003). The court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Supreme Court of the United States has further stated that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (internal citations omitted). Moreover, "'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

III.

The court will address first whether the Trustee's amended complaint against the Defendants states a claim for relief before examining the sufficiency of the Defendants' countercomplaint. The Trustee's sole basis for relief is avoidance under 11 U.S.C. § 549(a) of alleged unauthorized transfers of property of the estate and recovery of that property or its value from the Defendants under 11 U.S.C. § 550(a). Under § 549(a), subject to certain inapplicable exceptions, "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case; and . . . that is not authorized under this title or by the court." As is plainly evident from the statute,

6

there are three requirements for avoidance under § 549(a): (1) a transfer of property of the estate; (2) that occurred after the commencement of the case; and (3) that was not authorized by any provision of the Bankruptcy Code or by the court. *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 465 (6th Cir. 1991).

> Further, § 550(a) of the Bankruptcy Code provides:
>
> Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 549, . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>>
>> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a). Under this provision, an "initial transferee" is generally the party who receives a transfer of property directly from the debtor and has dominion or control over the property. *Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528, 533 (6th Cir. 2003).

In their motion to dismiss, the Defendants assert that the Trustee has failed to allege that the transfers the Trustee seeks to avoid were transfers of property of the estate. While this assertion is correct as to certain alleged transfers in the original complaint, the Trustee expressly alleges in the amended complaint that each transfer was a transfer of property of the estate. Accordingly, any deficiencies in pleading as to this element of § 549(a) has now been remedied by the Trustee. The motion to dismiss also cites other critical omissions in the complaint, all of which are no longer applicable. Specifically, the Defendants allege that the complaint fails to allege facts supporting fraud and conspiracy to commit fraud, including damages for fraud, and fails to provide a basis for punitive damages. However, the Trustee has deleted in the amended complaint all bases for relief other than §§ 549(a) and 550 and no longer seeks punitive damages. Therefore, the Defendants' arguments regarding insufficiencies in the complaint have now been rendered moot by the amended complaint.

Furthermore, an examination of the amended complaint indicates that it sets forth sufficient factual matter, accepted as true, that state facially plausible claims for relief under §§ 549 and 550. The amended complaint describes in sufficient detail transfers to the Defendants that took place after the Debtor's bankruptcy case was filed, and which are alleged to be unauthorized transfers of

7

property of the estate. To the extent these allegations are ultimately established as true they provide a basis for relief to the Trustee under § 549 of the Bankruptcy Code. As to § 550, the amended complaint alleges certain facts indicating that the Defendants received the transferred property directly from the Debtor and suggesting that they had dominion over the property such that they are initial transferees within the contemplation of § 550. Accordingly, the Defendants' motion to dismiss must be denied.

## IV.

The court turns next to the sufficiency of the Defendants' countercomplaint against the Trustee. As previously set forth, the Defendants assert five counterclaims against the Trustee: setoff, breach of contract, breach of the covenant of good faith and fair dealing, negligence, and violation of the Tennessee Consumer Protection Act ("TCPA"). With the exception of the latter, the Defendants also cite these claims as affirmative defenses to the Trustee's complaint. Notwithstanding the dual role of these allegations, the Defendants do not seek affirmative relief against the Trustee except to the extent the Trustee prevails in his avoidance claims, in which case the Defendants seek recovery in the same amounts as the Trustee seeks. The only exception to this statement is with respect to the Defendants' TCPA counterclaim for which the Defendants request treble damages and attorney fees. In his motion to dismiss, the Trustee argues that none of the counterclaims alleged by the Defendants states a claim for relief. Each will be examined in turn.

The first and most generalized counterclaim asserted by the Defendants is for setoff or offset. Specifically, the Defendants state that they "are entitled to setoff or offset in the amount asserted by the Trustee for any claims or interest that he seeks to avoid, rescind or repudiate with respect to the sale transactions that occurred." Similarly, in the affirmative defense section of their answer, the Defendants allege that "they are entitled to an offset or setoff for any potential claim of fraud or unauthorized transfer since the Trustee authorized [the debtor] to make direction for the payments by sale to Joe Irving," and that "the Trustee's actions and negligence entitle Defendants to set off amounts recovered by the Trustee of any amounts alleged in the Complaint."

In the Trustee's motion to dismiss, the only argument made specifically about the Defendants' setoff claim is that "no facts supporting such right are alleged." The Defendants' response to this argument is that under Tennessee law they are entitled to offset any damages

8

awarded them on their causes of action to the extent of any damages awarded the trustee. Thus, the Defendants implicitly concede that they are not claiming setoff as an independent cause of action but rather as a means of reducing their liability to the extent they prevail on their other alleged causes of action. Because the Defendants have preserved any setoff right they may have by raising setoff as an affirmative defense, the assertion of setoff as a counterclaim is duplicative and unnecessary. Accordingly, it will be dismissed. *See Lassman v. Reilly (In re Feeley)*, 393 B.R. 43, 51 (Bankr. D. Mass. 2008) (striking setoff counterclaim where duplicative of affirmative defense pursuant to Federal Rule of Civil Procedure 12(f) which provides for the striking of any "redundant, immaterial, or impertinent or scandalous matter").

The Defendants' next claim in their countercomplaint is for breach of contract, specifically with respect to the tobacco purchased by defendant Joseph Irving from the Debtor. In essence, the Defendants assert that the Trustee's avoidance action constitutes interference with Joseph Irving's purchases and therefore breach of contract. In his motion to dismiss the breach of contract counterclaim, the Trustee notes that to state a claim for breach of contract under Tennessee law, one must allege "(1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach," citing *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs., Ltd.,* 79 F.3d 496, 514 (6th Cir. 1996). According to the Trustee, the Defendants in their countercomplaint fail to allege a contract or the basis for any breach of contract. In response, the Defendants reference the sales of tobacco by the Debtor to Joseph Irving and argue that because the Trustee authorized the Debtor to operate the warehouse business on behalf of the estate, the attempted avoidance of these sales constitutes breach of the sales contracts.

Although framed as a counterclaim for breach of contract, the Defendants' argument is essentially a defense to the avoidance claim, that the transfers of tobacco by the Debtor to Joseph Irving may not be avoided because the Trustee authorized the Debtor to sell tobacco on behalf of the estate. If the Defendants are correct that the Trustee authorized the Debtor to conduct sales on behalf of the bankruptcy estate, then the Trustee can not prevail on his avoidance claim since the transfers must be unauthorized to be subject to avoidance. *See* 11 U.S.C. § 549(a). If on the other hand the Debtor had no authority to act on behalf of the estate, then the transfers are avoidable, assuming that the tobacco sold was property of the estate and there is no other basis for

9

authorization.[3]  Thus, the transfers were either authorized contracts on behalf of the estate or they were not.  This court knows of no authority–and none has been cited–for the proposition that an action by a trustee to avoid an unauthorized transfer by the debtor constitutes a breach of a contact that the debtor had no authority to enter into.  Consequently, the defendant's breach of contract counterclaim must be dismissed except to the extent that it is a denial that the transfers were unauthorized.

The Defendants' third counterclaim is for breach of the covenant of good faith and fair dealing.  The Defendants' claim in this regard is essentially a reiteration of their breach of contract claim, that by seeking to avoid the sales to Joseph Irving after having granted authority to the Debtor to act on the estate's behalf, the Trustee has breached the covenant of good faith and fair dealing.  Again, the Trustee's motion to dismiss argues that no facts support this claim, with the Defendants' response again being some form of the contention that the Trustee authorized the Debtor to act as agent for the estate.

The Tennessee Court of Appeals has explained that "a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief," but rather "an element or circumstance of recognized torts, or breaches of contracts."  *Duke v. Browning-Ferris Indus. of Tenn., Inc.*, No. W2005-00146-COA-R3-CV, 2006 WL 1491547*, *9* (Tenn. App. May 31, 2006)

---

[3] For example, an authorized transaction under § 549 may include those transfers which occur in the ordinary course of business pursuant to 11 U.S.C. § 363(c)(1), which states:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1); *see also* 11 U.S.C. § 1108 ("Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business."); *Dobin v. Presidential Fin. Corp. of Delaware Valley (In re Cybridge Corp.)*, 304 B.R. 681, 685-86 (Bankr. D.N.J. 2004) (recognizing § 363(c)(1) as an exception applicable to § 549(a)(2)(B)); *Wilmington Trust, Co. v. WCI Steel, Inc. (In re WCI Steel, Inc.)*, 313 B.R. 414, 417 n.2 (Bankr. N.D. Ohio 2004) ("Under section 363(c)(1) of the Bankruptcy Code payments made in the ordinary course of a debtor's business are authorized and are not avoidable under section 549(a) of the Bankruptcy Code."); *but see Marathon Petroleum Co. v. Cohen (In re Delco Oil, Inc.)*, 599 F.3d 1255, 1262-63 (11th Cir. 2010) (ordinary course of business transfer avoided because debtor had no authority to use cash collateral under § 363(c)(2)).

10

(citing *Solomon v. First Nat'l Bank*, 774 S.W.2d 935, 945 (Tenn. App. 1989)). Therefore, because Defendants' counterclaim for breach of the covenant of good faith and fair dealing is a component of their breach of contract counterclaim, the court reaches the same conclusion as to this counterclaim's viability. If the Trustee authorized the Debtor to enter into contracts for the sale of tobacco on behalf of the estate, then the Trustee cannot avoid the sales to Joseph Irving, and there is no basis for the Defendants to assert a violation of the covenant of good faith and fair dealing. Moreover, if the Trustee *did not* authorize the Debtor to act as his agent, such that the Debtor had no authority to sell estate tobacco to Joseph Irving, then the ultra vires acts of the Debtor are avoidable by the Trustee such that, again, there is no basis for asserting a breach of contract counterclaim against the Trustee. In other words, if the Trustee did not authorize the Debtor to act as his agent, then it is not the Trustee's contract for which he can be liable for its breach. Accordingly, the Defendants' counterclaim for breach of the covenant of good faith and fair dealing must be dismissed.

The fourth of the five counterclaims raised by the Defendants is negligence. According to the Defendants:

> The Trustee was negligent in control of the operations of the tobacco warehouse operations related to [the Debtor] and the purchase and sale of tobacco such that he either allowed [the Debtor] to remove product, transfer funds as authorized or fail to control such activities such that he allowed the fraudulent activities of [the Debtor] to proximately cause a loss to the Estate and, therefore, the actions of the Trustee constitute a proximate cause of any loss sustained by the Defendants as a result of rescission, avoidance or vacating the sales and purchases of tobacco as set forth above.

Similarly, as an affirmative defense, the Defendants assert that the Trustee's negligence, the Trustee's failure to supervise, monitor, or otherwise limit the Debtor's authority, and the Trustee's failure to monitor payments made by BSC for purchased tobacco were the proximate cause of any loss sustained by the bankruptcy estate. In his motion to dismiss, the Trustee contends that the Defendants fail to allege any factual basis for their claim that the Trustee was negligent in his control of the Debtor, an assertion the Defendants dispute. The Defendants also cite in response *Ford Motor Credit Company v. Weaver,* 680 F.2d 451, 461 (6th Cir. 1982), for the proposition that the Trustee owes a duty of care in his operation of the Debtor's business and that he is liable in his official capacity for acts of negligence.

11

The Defendants' arguments regarding the Trustee's liability for alleged negligence are misplaced. The Trustee is not seeking recovery against the Defendants for losses caused by the Debtor or sustained by the bankruptcy estate. As stated in the treatise *Collier on Bankruptcy*:

> The purpose of section 549 is to allow the trustee to avoid specified postpetition transfers, whether or not they deplete the estate . . . . Fraud by the debtor and, except with respect to purchasers of real property, good faith on the part of the transferee are irrelevant to the application of this section.

5 *Collier on Bankruptcy* ¶ 549.02 (16th ed. 2012) (footnotes omitted).

Similarly, the only loss the Defendants claim as a result of the Trustee's alleged negligence is the loss that they will sustain in the event the Trustee prevails in this avoidance action. However, as a matter of law, such losses do not arise from a trustee's negligence or from a debtor's fraud. Rather, recovery is predicated by statute solely on an unauthorized postpetition transfer of estate property. Thus, the Defendants have failed to state a claim against the Trustee for negligence.

The Defendants' last counterclaim is under the TCPA. Based on the same factual allegations as the Defendants' other counterclaims, the Defendants maintain that "by either failing to supervise [the Debtor] or authorizing him to act in a totally unsupervised manner to conduct sales and purchases of tobacco, which the Trustee now seeks to rescind . . . ," the Trustee has engaged in unfair and deceptive practices violative of the TCPA. In response, the Trustee seeks dismissal of this counterclaim, arguing that the Defendants have failed to plead any facts constituting unfair and deceptive practices within the purview of the statute. The Defendants dispute this contention.

To recover under the TCPA, "the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . .'" *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. App. 2005) (quoting Tenn. Code Ann. § 47-18-109(a)(1) (2005)).[4] As with

---

[4] The Tennessee legislature amended the TCPA in the Tennessee Civil Justice Act of 2011, Pub. Ch. 510, to render the formerly illustrative list of unfair or deceptive acts or practices set forth in Tenn. Code Ann. § 47-18-104(b) as the exclusive acts or practices for which an injured party may recover damages. *See* Tenn. Code Ann. §§ 47-18-104(b)(27) and 47-18-109(a)(1). With respect to any other act or practice which is deceptive to the consumer or to any other person, enforcement is vested exclusively in the office of the attorney general and reporter and the director of the division
(continued...)

respect to the other counterclaims, Defendants' TCPA claim is fatally defective because the alleged loss sustained by them arises from the Trustee's statutory avoidance powers rather than any unfair or deceptive practices by the Trustee. Thus, even if it is assumed for the purposes of the Defendants' motion that the Trustee engaged in unfair or deceptive acts or practices as alleged, thereby sufficiently stating the first element of a TCPA claim, the second element of such a claim, that "the defendant's conduct caused an ascertainable loss," is lacking. Consequently, the TCPA counterclaim fails to state a claim for relief that is "plausible on its face," and therefore must be dismissed.

V.

In accordance with the foregoing, an order will be entered granting the Trustee's motion to dismiss the Defendants' countercomplaint and denying the Defendants' motion to dismiss the Trustee's complaint as amended.

# # #

---

[4](...continued)
of consumer affairs in the Tennessee Department of Commerce and Insurance. Tenn. Code Ann. § 47-18-104(b)(27). The 2011 amendments to the TCPA apply to liability actions that accrue after October 1, 2011. *See* 2011 Tenn. Pub. Acts 510 § 24.

13